Betty D. **PENNINGTON**,
Plaintiff–Appellant,

v.

**VISTRON CORPORATION**, Defendant,

**R.J. Reynolds Tobacco Co., Inc., and American Tobacco Company**,
Defendants–Appellees.

No. 88–3442.

United States Court of Appeals,
Fifth Circuit.

June 28, 1989.

Edward J. Walters, Jr., Baton Rouge, La., for plaintiff-appellant.

Kenneth J. Servay, Charles Chassaignac, Harry McCall, Jr., Carmelite Bertaut, New Orleans, La., for R.J. Reynolds Tobacco Co.

Curtis Boisfontaine, Sally A. Shushan, New Orleans, La., Neil E. Mellen, William M. Bradner, Jr., New York City, for American Tobacco Co.

Before REAVLEY, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Betty Pennington appeals a summary judgment in favor of the manufacturers of the cigarettes that her deceased husband had smoked for many years. In a products liability suit governed by Louisiana law, Mrs. Pennington contended that her husband contracted cancer of the esophagus as a result of his exposure to certain chemicals in the workplace, either alone or in conjunction with his consumption of alcohol and cigarettes.

We hold that the Federal Cigarette Labeling and Advertising Act preempts some, but not all, of Mrs. Pennington's claims against the cigarette manufacturers. We find that summary judgment is proper for Mrs. Pennington's non-preempted claims because she failed to introduce sufficient evidence in opposition to the appellee's motion for summary judgment to establish the existence of a substantial issue of material fact for trial. We affirm the district court's summary judgment in favor of R.J. Reynolds Tobacco Company and the American Tobacco Company.

## I. *Facts and Prior Proceedings*

Appellant Betty Pennington's husband, Kenneth Pennington, was employed by Uniroyal, Inc. in Baton Rouge, Louisiana, from 1966 until May, 1981. During the course of his employment, Kenneth Pennington was allegedly exposed to the chemical acrylonitrile, a known carcinogen.[1] Mrs. Pennington contends that Kenneth Pennington was also exposed to the chemicals 1,3 butadiene and styrene while employed at Uniroyal. Kenneth Pennington allegedly smoked cigarettes manufactured by the appellees, R.J. Reynolds Tobacco Company and the American Tobacco Company (hereafter, "the tobacco companies"), since 1954. He also consumed alcohol.

In 1982, Kenneth Pennington was diagnosed as having cancer of the esophagus. He died on January 1, 1983.

On December 29, 1983, Mrs. Pennington filed a diversity jurisdiction suit against approximately twenty-five companies, alleging that their products caused or contributed to Kenneth Pennington's cancer and resulting death. Named as defendants were several chemical manufacturers who allegedly supplied acrylonitrile, 1,3 butadiene, and styrene to the Uniroyal facility in Baton Rouge; several brewers who manufactured beer allegedly consumed by Kenneth Pennington; and the appellee tobacco companies. The complaint alleged, in the alternative, that Mr. Pennington's esophageal cancer was caused by exposure to acrylonitrile; or exposure to acrylonitrile and other workplace chemicals; or exposure to the chemicals, alcohol, and cigarettes, acting individually or in concert with each other. Mrs. Pennington contended that the chemical manufacturers, brewers, and tobacco companies were strictly liable for causing or contributing to the esophageal cancer and resulting death of her husband.

In August 1987, after over three and a half years of discovery, the tobacco companies moved for summary judgment. On December 22, 1987, the district court granted the motion for all claims of injury resulting from the decedent's smoking after 1965. The court concluded that these claims were preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.* (1982) ("the Act"), which went into effect on January 1, 1966. The court allowed Mrs. Pennington thirty days to file an additional complaint asserting possible claims that were not preempted. Mrs. Pennington filed an amended complaint, but did not change or supplement with additional claims her memorandum opposing the tobacco companies' motion for summary judgment. The district court then granted summary judgment on Mrs. Pennington's non-preempted claims, concluding that she had failed to offer sufficient evidence to show that there was a

---

1. The Occupational Safety and Health Administration has regulated workplace exposure to acrylonitrile since 1978. *See* 29 C.F.R. § 1910.1045 (1988). In the present lawsuit, Mrs. Pennington does not contend that these regulations were violated. She argues, however, that the manufacturers who supplied acrylonitrile to Uniroyal are strictly liable for her husband's illness and resulting death.

genuine issue of material fact for trial. The court certified for appeal pursuant to Fed.R.Civ.P. 54(b) its ruling granting summary judgment for the tobacco companies. Mrs. Pennington appeals.

## II. *Preemption*

Mrs. Pennington first challenges the district court's ruling that all of her post–1965 claims are preempted by the Cigarette Labeling and Advertising Act. We hold that the Act preempts those claims that challenge the adequacy of the warning on cigarette packages after 1965, or suggest that the tobacco companies had a duty to provide warnings in addition to the warning mandated by Congress, or question the propriety of the tobacco companies' advertising and promotional activities. We also conclude, however, that the preemptive scope of the Act is not so broad to encompass every possible claim of injury arising from the smoking of cigarettes after 1965. We find that Mrs. Pennington's contention that cigarettes are unreasonably dangerous per se under Louisiana law is not preempted.

### A. *Preemption Analysis*

■ The Supreme Court has laid out a well-worn path for us to follow in preemption cases. *California v. ARC America Corp.*, — U.S. —, —, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). First, we must determine whether Congress has stated expressly its intent to supersede state law through its enactment of the statute in question. Even in the absence of express preemptive language, Congress may legislate in a given area so comprehensively that federal law occupies an entire field, leaving no room for state regulation. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). Finally, even when Congress has not occupied an entire field, state law is nevertheless preempted when it actually conflicts with federal law. Such a conflict may occur when compliance with both state and federal law is impossible, *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S.

132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objects of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Throughout this inquiry, "the critical question ... is always whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986).

■ While the path of analysis is clear, we must nevertheless tread cautiously. Preemption should not be inferred from every Congressional enactment that overlaps state regulation. Instead, "we start with the assumption that the historic police powers of the State [are] not to be superseded by [a federal statute] unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). This presumption against preemption applies to state or local regulation of matters of health and safety. *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). In addition, we are concerned only with an actual conflict between federal and state law; "[t]he existence of a hypothetical or potential conflict is insufficient to warrant preemption." *Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 102 S.Ct. 3294, 3299, 73 L.Ed.2d 1042 (1982).

### B. *The Labeling Act*

The starting point of our inquiry is, of course, the Federal Cigarette Labeling and Advertising Act. Originally enacted in 1965, the Act was a response to a growing awareness of the health threat posed by cigarettes. Congress was also concerned, however, with protecting the national economy and in particular with avoiding a multiplicity of different state-mandated warning labels. *See Palmer v. Liggett Group, Inc.,* 825 F.2d 620, 622–23 (1st Cir.1987); *Cipollone v. Liggett Group, Inc.,* 789 F.2d

181, 187 (3rd Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987). The Act's declaration of policy and purpose clearly reflects these competing interests. It states:

It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal Program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331.[2]

In the Act, Congress dictates the exact warning to be placed on every package of cigarettes sold in the United States. Originally, the warning stated: "Caution: Cigarette Smoking May Be Hazardous To Your Health." Pub.L. No. 89–92, § 4, 79 Stat. 283 (1965). In 1969, this warning was strengthened to read: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous To Your Health." 15 U.S.C. § 1333 (1982).[3]

**2.** Subparagraph (1) of § 1331 was amended in 1984 to read:

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; ...

15 U.S.C. § 1331(1) (Supp. II 1984).

**3.** In 1984, Congress replaced this warning with a set of rotating warnings which state:

SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.

The Act also contains a preemption provision. It states:

(a) No statement relating to smoking and health, other than the statement required by § 1333 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334 (1982).

■ This preemption provision expressly precludes a state legislature from mandating a warning different from that required by Congress. It is clear, however, that it does not make any reference to a state tort claim, even indirectly, which relates to the effects of smoking upon health. We must conclude that the Act does not expressly preempt Mrs. Pennington's products liability claims. We note that the courts of appeal are in complete agreement on this question. *See Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 234 (6th Cir. 1988); *Palmer,* 825 F.2d at 625; *Cipollone,* 789 F.2d at 185.

The more difficult question is whether the Act impliedly preempts some or all of Mrs. Pennington's claims. The initial step in this analysis is to examine the substance of Mrs. Pennington's complaint. Only then can there be an examination of possible preemptive conflicts between the federal statute and Mrs. Pennington's state tort claims.[4]

SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.
SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.
15 U.S.C. § 1333 (Supp. II 1984) Mr. Pennington died before these new requirements came into effect, and thus they are not at issue in this case.

**4.** We note that we are the first U.S. Court of Appeals that is required to decide precisely which tort claims before it are preempted by the Labeling Act. In the first suit to reach a federal court of appeals, the Third Circuit accepted a certified appeal under 28 U.S.C. § 1292(b) (1982) to determine whether the district court erred in granting a motion to strike the cigarette

## C. *Substantive Tort Claims*

Mrs. Pennington contends that the tobacco companies are strictly liable for manufacturing a product that caused or contributed to her husband's fatal cancer. To prevail on this claim, she must prove that harm resulted from a condition of the cigarettes that rendered them unreasonably dangerous to normal use. *Halphen v.* *Johns–Manville Sales Corp.*, 484 So.2d 110, 113 (La.1986).

In its landmark *Halphen* decision, the Louisiana Supreme Court set out several different ways to establish that a product is unreasonably dangerous. Mrs. Pennington seeks recovery under two of these theories under Louisiana law.[5] She contends that the tobacco companies are liable: (1) for failing to provide adequate warnings about the dangers of smoking,[6] and (2) for

---

manufacturer's defense of preemption. The case had not progressed beyond the pleadings. The Third Circuit court reversed the district court and stated in broad terms that certain claims were preempted, but left it to the district court to decide which specific claims had to fail after further development of the case. *Cipollone*, 789 F.2d at 188. The same procedural posture occurred in *Stephen v. American Brands, Inc.*, where the Court affirmed the district court's refusal to strike the defendant's preemption defense, but allowed the district court to decide which specific claims were preempted after further proceedings. 825 F.2d 312, 313 (11th Cir.1987).

In *Palmer v. Liggett Group, Inc.*, the only issue before the Court was whether the Act preempts those claims that challenge the adequacy of the federal warning on cigarette packages or the propriety of the defendant's advertising and promotional activities. 825 F.2d at 621. Thus, the Court did not reach the question of whether other tort claims were preempted by the Act. The same is true in *Roysdon v. R.J. Reynolds Tobacco Co.*, where the Sixth Circuit affirmed a district court ruling that the plaintiff's failure to warn claims were preempted, and that the other claims had to fail as a matter of state law. 849 F.2d at 232.

In contrast, Mrs. Pennington's claims are before us after the district court ruled that *all* of her post–1965 claims are preempted by the Labeling Act. The court entered summary judgment after four years of discovery had provided Mrs. Pennington with ample opportunity to refine her claims. Indeed, her complaint was amended three times. We must decide whether the lower court's ruling is correct, and must delineate with precision the preemptive scope of the Act as it applies to Mrs. Pennington's claims.

5. Mrs. Pennington's complaint contains seventeen specific allegations against the tobacco companies. The parties agree, however, that these allegations essentially state two grounds of recovery.

We note briefly that certain claims are not before us on appeal. Mrs. Pennington alleged in her complaint that the cigarettes smoked by the decedent were unreasonably dangerous in construction or composition. This theory of products liability applies when a product contains an unintended abnormality. A product

may be unreasonably dangerous in design or composition, for example, when the product does not meet the manufacturer's own specifications. *Halphen*, 484 So.2d at 114.

Mrs. Pennington introduced no evidence to support the claim that the cigarettes smoked by the decedent had some unique abnormality. She also does not raise this theory in her brief on appeal. Hence, we find that Mrs. Pennington has waived this claim. *See United States ex rel. Howell Crane Serv. v. U.S. Fidelity & Guaranty Co.*, 861 F.2d 110, 115 (5th Cir.1988); *Franceski v. Plaquemines Parish School Bd.*, 772 F.2d 197, 199 n. 1 (5th Cir.1985) (issue not briefed may be considered waived).

We also note that Mrs. Pennington did not allege that the cigarettes smoked by her husband were unreasonably dangerous because alternative products or alternative designs were available to serve the same needs with less risk of harm. *See Halphen*, 484 So.2d at 115.

6. Mrs. Pennington's complaint sets out several variations of the failure to warn claim. She contends, for example, that the tobacco companies are liable for failing to warn that the risk of cancer increases for those who smoke and also consume alcohol or are exposed to chemical carcinogens in the workplace. She also claims that the tobacco companies are liable for their failure to warn of the risks of smoking before the enactment of the Labeling Act.

In addition, Mrs. Pennington alleges that the cigarette companies are liable for failing to conduct an educational program informing the public of the risks of smoking to counterbalance their advertising that depicted smoking as desirable. We find that this claim does not state an independent cause of action under Louisiana law. *See Halphen*, 484 So.2d at 113–15 (setting out four theories of products liability recognized in Louisiana). Instead, it challenges the information that was and was not given to the public regarding the health effects of smoking, and thus is best analyzed as a failure to warn claim.

Mrs. Pennington also claims that the tobacco companies are at fault for failing to test their products sufficiently. This claim is also not actionable per se, but instead is a variation of the failure to warn theory. Under Louisiana law, a duty to warn arises for dangers inherent

manufacturing a product that was unreasonably dangerous per se.[7]

Under the failure to warn theory, a product may be unreasonably dangerous "if the manufacturer fails to adequately warn about a danger related to the way a product is designed." *Halphen*, 484 So.2d at 114–15. The duty to warn arises only for those dangers inherent in the normal use of the product that are not well-known or obvious to the user. *Id.* The adequacy of an existing warning is often the key disputed issue in a products liability suit brought under this theory. *See, e.g., Andries v. General Motors Corp.*, 444 So.2d 1180, 1182–84 (La.1983).

A product is unreasonably dangerous per se under Louisiana law "if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product." *Halphen*, 484 So.2d at 114. This is known as the risk-utility test for a product defect. *Id.* at n. 2. Under this theory, the manufacturer's actual knowledge of the danger of the product and the fact that a risk was not discoverable under existing technology are not relevant concerns. Instead, the sole issue is whether the benefits of the product as perceived at the time it was designed or marketed outweigh the dangers inherent in its use. *Id.* at 114.

The above outline of the substantive law and the issues underlying Mrs. Pennington's claims leads to the next analytical question. The question is whether these tort claims are displaced by or conflict with the Cigarette Labeling Act, and are, therefore, impliedly preempted.

### 1. *Failure to Provide Adequate Warnings*

■ Through the Cigarette Labeling Act, Congress has prescribed the exact warning to be placed on every package of cigarettes sold in the United States since January 1, 1966. *See supra,* Section II.B. Mrs. Pennington contends that the tobacco companies did not warn her husband adequately of the dangers of cigarette smoking, despite their compliance with the Act. Relying on decisions of the First, Third, and Eleventh Circuits, the district court found that the Act precluded Mrs. Pennington's inadequate warning claim. We join our sister circuits in holding that this claim is preempted. *See Roysdon*, 849 F.2d at 235; *Palmer*, 825 F.2d at 629; *Stephen*, 825 F.2d at 313; *Cipollone*, 789 F.2d at 187.

■ Preemption under the federal law is not limited to state warning statutes. State tort law liability can have a regulatory effect that may conflict with a federal statute or frustrate congressional objectives, and thus can trigger federal preemption. *See Fidelity Federal Savings & Loan Association v. De la Cuesta*, 458 U.S. 141, 156–59, 102 S.Ct. 3014, 3024–25, 73 L.Ed.2d 664 (1982); *Chicago and North Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 324–26, 101 S.Ct. 1124, 1133–34, 67 L.Ed.2d 258 (1981); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 246–47, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959).

The Labeling Act clearly indicates Congress' intent to supplant state regulation of any warnings to accompany the distribution of cigarettes. Congress determined that "no statement relating to smoking and health, other than the statement required

---

in a product that are not well-known or obvious. The testing of a product, or the failure to test, is relevant in determining when a manufacturer has breached this duty. *See Halphen*, 484 So.2d at 114–15.

**7.** Again, Mrs. Pennington sets out several variations of this claim in her complaint. Among them is her contention that the cigarette manufacturers were at fault for "negligently and knowingly placing on the market a product unreasonably dangerous to normal use." While this claim sounds in negligence, the analysis applied to determine whether a manufacturer was negligent in marketing an unreasonably dangerous product is essentially the same as the test used to determine whether the manufacturer is strictly liable for marketing the same dangerous product. The only distinction is that under the negligence theory, Mrs. Pennington must establish that the tobacco companies knew or should have known of the risk. *See Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 497 (La. 1982).

by § 1333 of this Title, shall be required on any cigarette package." 15 U.S.C. § 1334(a). Under this provision, a state legislature cannot require warnings on cigarettes sold within its borders that differ from the congressionally-mandated warnings. Indeed, an express purpose of the Act is to ensure that the national economy is not impeded "by diverse, nonuniform, and confusing cigarette labeling." 15 U.S.C. § 1331.

We find that Mrs. Pennington's claim that the existing warnings are inadequate under Louisiana law, if successful, conflict with the statutory requirement of uniform national warnings. Our colleague, Judge Brown, writing for the First Circuit, succinctly explained this point:

> If a manufacturer's warning that complies with the Act is found inadequate under a state tort theory, the damages awarded and verdict rendered against it can be viewed as state regulation: the decision effectively compels the manufacturer to alter its warnings to conform to different state law requirements as 'promulgated' by a jury's findings.... This challenge to the federal warning label's sufficiency—and the confusion it would engender—surely contravenes the Act's policy of uniform labeling.

*Palmer*, 825 F.2d at 627.

The Labeling Act reflects a delicate political balance between two important goals: warning the public of the hazards of cigarette smoking and protecting the national economy. *Palmer*, 825 F.2d at 626; *Cipollone*, 789 F.2d at 187. This balance is reflected in the policy statement of the Act. 15 U.S.C. § 1331. A state court jury verdict concluding that the warnings selected by Congress do not sufficiently protect the citizens of a state from the risks of smoking would clearly upset this carefully balanced federal scheme. *Cf. City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638–39, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973).

In summary, the claim that the cigarette companies did not provide adequate warning under Louisiana law conflicts with Congress' clear intent to impose uniform warning and labeling regulations throughout the country. It also upsets the congressional balance between warning the public of the risks of cigarettes and protecting the national economy. For these reasons, we hold that Mrs. Pennington's claim that the tobacco companies failed to provide adequate warnings to her husband of the dangers of smoking after January 1, 1966, is preempted by the Cigarette Labeling Act. Our holding encompasses all variations of Mrs. Pennington's post–1965 failure to warn claim,[8] including the contention that the tobacco companies failed to warn of the specific dangers involved when smoking is combined with alcohol consumption and exposure to industrial chemicals. *Cf. Roysdon*, 849 F.2d at 232 (claim that tobacco company failed to provide specific warning about the risk of vascular disease, which ultimately required leg amputation, is preempted). Our ruling also applies to Mrs. Pennington's claim that the tobacco companies failed to educate the public about the risk of smoking in order to counterbalance their promotional activities.[9]

### 2. *Unreasonably Dangerous Per Se*

■ The district court ruled that Mrs. Pennington's claim that cigarettes are un-

---

8. Mrs. Pennington alleged that her husband was "continually harmed by the breathing of cigarette smoke" from the time that he took up the habit in 1954. Her claim for any injury arising from smoking before the effective date of the Act is, of course, not preempted. We address this claim *infra*, at Section III.

9. We conclude that this claim does not state an independent cause of action under Louisiana law, but instead is best analyzed as a "failure to warn" claim since it challenges the cigarette companies' failure to provide information about the risks of smoking to the public. *See supra*, note 6. To the extent this claim is recognized as a separate theory of recovery, however, it is preempted because the Act precludes any "requirement or prohibition based on smoking and health ... under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b). Thus, for the same reasons that she cannot challenge the adequacy of the warnings provided for in Act, Mrs. Pennington cannot bring a tort claim alleging liability based on the promotion or advertisement of cigarettes that are labeled in compliance with the Act. *See Cipollone*, 789 F.2d at 187.

reasonably dangerous per se under Louisiana law was also preempted by the Federal Cigarette Labeling and Advertising Act. The court reasoned that this theory, which requires a jury to balance the danger-in-fact against the utility of a product, was preempted because "Congress has already conducted its own risk-utility test, and has determined that cigarettes, properly labeled, may be lawfully sold. No state can, by jury verdict or other state law, disregard that congressional finding."

The tobacco companies urge us to adopt this analysis. They argue that the congressional purpose of protecting the national economy, as reflected in the Act, must preempt *any* tort suit alleging injury from smoking after January 1, 1966. The tobacco companies contend that Congress, through the Act, has already weighed the risks and utility of cigarette smoking, has determined that cigarettes may be legally sold when properly labeled, and has decided to protect the tobacco industry. If tort claims based on the health effects of smoking are nevertheless allowed, the argument goes, large jury verdicts will force the tobacco companies out of business. This would undercut Congress' decision to allow cigarettes to be sold and to protect the tobacco industry.

In short, the tobacco companies urge us to find complete preemption of all state tort claims from the fact that Congress decided to allow the sale of properly labeled cigarettes and to protect the tobacco industry from the economic burden of nonuniform warning requirements. We must reject this argument. Prior opinions of this Court and the Supreme Court make clear that a congressional decision to protect or even encourage a certain industry or product does not, by itself, preempt all tort suits challenging the safety of the product.

Our decision in *Hurley v. Lederle Laboratories Div. of American Cyanamid Co.*, 863 F.2d 1173 (5th Cir.1988), provides a clear illustration of this principle. The plaintiff, a child who suffered severe neurological damage after receiving DPT vaccine, sued the manufacturer of this product. Among other claims, he asserted that the manufacturer was liable because the product was unreasonably dangerous and the warnings of possible adverse reactions were inadequate. The manufacturer argued that these claims were preempted by federal statutes and regulations that approved the vaccine and encouraged widespread vaccination.[10]

This Court rejected the manufacturer's contention. We noted that it might be a reasonable policy decision to conclude that the benefits of vaccination were such that the manufacturer should be relieved of state tort law liability. We concluded, however, that we could not assume that this decision had already been made by Congress solely on the basis of a statute promoting a widespread vaccination program. 863 F.2d at 1177–78. In so holding, we relied on Supreme Court cases emphasizing that traditional areas of state regulation are not preempted simply because the federal government regulates comprehensively in the area, even when federal policy supports a certain industry. *See Hillsborough County v. Automated Medical Labs*, 471 U.S. at 715–23, 105 S.Ct. at 2376–80 (Local regulation of plasma donation was not preempted by comprehensive federal regulations and a national blood policy designed to ensure an adequate plasma supply); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (Jury verdict awarding exemplary damages for escape of radiation from nuclear facility was not preempted by the Atomic Energy Act, although the Act reflected a strong congressional interest in fostering the development of the nuclear energy industry and regulating nuclear safety concerns).

In *Silkwood, Hillsborough County*, and *Hurley*, the Courts did not infer preemption of all tort claims from a congressional decision to encourage the use or develop-

---

**10.** The FDA approved the vaccine pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (1982). The Public Health Service conducted a vaccination program pursuant to the Public Health Services Act, 42 U.S.C. § 247b, 262 (1982).

ment of a certain product. These cases make clear that we cannot find complete preemption of all of Mrs. Pennington's post–1965 tort claims solely from Congress' decision to allow the sale of cigarettes and provide a certain degree of protection to the tobacco industry. Instead, we must examine the Cigarette Labeling and Advertising Act to see if it manifests a clear intent to supersede Mrs. Pennington's unreasonably dangerous per se claim. *See e.g., Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623 (amendment to Atomic Energy Act provided "ample evidence that Congress had no intention of forbidding the states to provide" for exemplary damages); *Hurley,* 863 F.2d at 1177–78 (statute provided "no reason to think that Congress intended the [Public Health Service] vaccination program ... to include—by implication—a holiday from state products liability law for vaccine manufacturers").

The language of the Cigarette Labeling Act regulates only two aspects of cigarette sales: labeling and promotional activities. Throughout the Act, the requirements it imposes are carefully limited to these two areas. Thus, for example, the policy statement explains that "[i]t is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal Program *to deal with cigarette labeling and advertising* with respect to any relationship between smoking and health...." 15 U.S.C. § 1333 (emphasis added). Similarly, the preemption provision states "[n]o requirement or prohibition based on smoking and health shall be imposed under State law *with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.*" 15 U.S.C. § 1334 (emphasis added).

Nothing in the Act indicates a congressional intention to supersede all state tort claims that challenge the health effects of cigarettes, especially in light of the presumption against preemption that applies to health and safety regulation by the states. *See Rice v. Santa Fe Elevator Corp.,* 331 U.S. at 230, 67 S.Ct. at 1152; *Hillsborough Co.,* 471 U.S. at 715, 105 S.Ct. at 2376. As the *Cipollone* court explained:

> We cannot say that the scheme created by the [Cigarette Labeling and Advertising] Act is 'so pervasive' or the federal interest involved 'so dominant' as to eradicate all of the [plaintiff's] claims. Nor are we persuaded that the object of the Act and the character of obligations imposed by it reveal a purpose to exert exclusive control over every aspect of the relationship between cigarettes and health.

789 F.2d at 186.

Accordingly, we reject the district court's conclusion that all post–1965 state tort claims alleging injury resulting from smoking cigarettes are preempted. We hold that Mrs. Pennington's claim that cigarettes are unreasonably dangerous per se under Louisiana law is not preempted by the Federal Cigarette Labeling and Advertising Act.[11]

---

11. As an alternative argument, the tobacco companies contend that Mrs. Pennington's unreasonably dangerous per se claim is preempted because it requires a jury to judge the adequacy of the warning label on cigarettes. In support of this argument, the tobacco companies note that the warning on a product is a relevant factor to consider when determining if a product is unreasonably dangerous per se. As the Louisiana Supreme Court explains, "[a] warning or other feature actually incorporated in the product when it leaves the manufacturer's control ... may reduce the danger-in-fact" of the product. *Halphen,* 484 So.2d at 114.

We conclude that the premise of the tobacco companies' argument is correct: if an unreasonably dangerous per se claim required a jury to assess the sufficiency of the statutory warnings placed on cigarettes, it would be preempted under our analysis, *supra,* Section II.C.1. We cannot say, however, that the *adequacy* (as opposed to the simple presence or absence) of a warning is at issue under the unreasonably dangerous per se theory. Indeed, the Louisiana Supreme Court carefully preserves a distinction between a products liability claim based upon a failure to warn (where the adequacy of the warning is the central issue), and the unreasonably dangerous per se theory (which considers the risks and utility of the product). *See Brown v. Sears, Roebuck and Co.,* 514 So.2d 439 (La. 1987), *rehearing denied,* 516 So.2d 1154 (La. 1988) (In denying rehearing, the Supreme Court clarified its prior opinion, explaining that it had not ruled that an escalator was unreasonably

### III. Non-Preempted Claims

In light of the foregoing analysis two kinds of non-preempted claims remain. The first is Mrs. Pennington's claim that cigarettes are unreasonably dangerous per se (This claim we have determined the district court erroneously held preempted). The second is her contention that the tobacco companies failed to provide adequate warnings prior to 1966 (This claim was properly held by the district court as not preempted.).

We conclude that the district court was correct in granting summary judgment on each of these claims. We discuss them in turn.

### A. The Contention That Cigarettes are not Unreasonably Dangerous as a Matter of Law

In support of the summary judgment on Mrs. Pennington's non-preempted unreasonably dangerous per se claim, the tobacco companies first contend that cigarettes are not unreasonably dangerous as a matter of law. The court below did not address this argument because it erroneously found this claim was preempted. Because we find support for this argument in other jurisdictions, it is appropriate to explain briefly why we decline to rule on this ground.

The tobacco companies rely on the Restatement (Second) of Torts to argue that cigarettes are not unreasonably dangerous as a matter of law. Under the Restatement, a product is defective "where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts § 402(A) comment g (1965). To be unreasonably dangerous, "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at comment i. Using this analysis, some courts have found that cigarettes are not unreasonably dangerous as a matter of law because "[k]nowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community." Roysdon, 849 F.2d at 236 (quoting Roysdon v. R.J. Reynolds Tobacco Co., 623 F.Supp. 1189, 1192 (E.D.Tenn.1985)).[12]

The tobacco companies urge us to adopt this analysis, and conclude that cigarettes are not unreasonably dangerous as a matter of Louisiana law. We cannot do so because the controlling Louisiana law was substantially broader than the law as stated in the Restatement. In contrast to the Restatement view, which defines an unreasonably dangerous product by explicit reference to the knowledge of the risk held by the consumer and the community, Louisiana's unreasonably dangerous per se theory asked a jury to consider less restrictively the danger-in-fact and the utility of the product: the risk-utility test. This distinction was explicitly recognized by the Louisiana Supreme Court, which described the unreasonably dangerous per se theory as "a separate class of defective product," in addition to "the classifications of unreasonably dangerous products recognized by most courts." Halphen, 484 So.2d at 113.

The tobacco companies also suggest that, even under Louisiana's risk-utility test for a product defect, cigarettes are not unreasonably dangerous per se as a matter of law. They contend that the risk-utility analysis set out in Halphen does not apply when a product's danger is well-known to the consumer. In support of this position, the tobacco companies point to two Louisiana cases which suggest, in dicta, that a product is not unreasonably dangerous per se when the risk of the product is well-known. Jurovich v. Catalanotto, 506 So. 2d 662, 665 (La.App. 5th Cir.), cert. denied,

dangerous per se, but instead had determined that the warning provided was inadequate).

**12.** The Roysdon court affirmed a directed verdict on this question. An example of the contrary view is Kotler v. American Tobacco Co., 685 F.Supp. 15, 20 (D.Mass.1988). There the court dealt with a legal theory analogous to the Restatement by ruling that whether cigarettes are "a defective product" is a question for the jury.

508 So.2d 87 (La.1987)(flammable product with clear warning); *Strickland v. Fowler,* 499 So.2d 199, 202 (La.App. 2nd Cir.), *cert. denied,* 500 So.2d 411 (La.1986)(handguns). Another court, however, has rejected this view. *Williams v. Ciba–Geigy Corp.,* 686 F.Supp. 573, 575 (W.D.La.), *aff'd,* 864 F.2d 789 (5th Cir.1988) ("*Halphen* does contain language implying the applicability of the theory, which focuses on the danger-in-fact of a product compared to its utility, to situations where the danger is known and signalled").

We are reluctant to consider whether cigarettes are not unreasonably dangerous per se as a matter of Louisiana law. To do so would require us to decide this unsettled question of state law which was not addressed by the court below.[13] We are also hesitant to rely on the Restatement and cases from other jurisdictions, as the tobacco companies urge. The cases that do suggest that cigarettes are not unreasonably dangerous are based on a definition of product defect that is markedly different from the risk-utility theory embodied in Louisiana's unreasonably dangerous per se doctrine. We need not undertake, however, to reach this question of Louisiana law because we find sufficient basis in the district court's opinion to uphold the grant of summary judgment on both of Mrs. Pennington's non-preempted claims—her contention that cigarettes are unreasonably dangerous per se and her contention as to liability arising under the pre–1966 use of cigarettes by her husband.

### B. *Genuine Fact Issue for Trial Not Shown*

■ The lower court granted summary judgment on Mrs. Pennington's non-preempted claim because it found she had failed to set out specific facts to show that there was a genuine issue for trial. *See*

Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Before ruling on this ground, the court granted Mrs. Pennington thirty days to amend her complaint to state additional non-preempted claims and to supplement her summary judgment memorandum. While she amended her complaint, Mrs. Pennington did not submit an additional memorandum or evidence in opposition to the tobacco companies' motion for summary judgment.

Mrs. Pennington contends that summary judgment was not proper on her non-preempted claims because the summary judgment proof established the existence of a material fact issue for trial. As to her unreasonably dangerous per se claim, Mrs. Pennington essentially argues that the risk-utility test necessarily raises factual questions about the dangers and utilities of cigarettes, and therefore must be tried. In addition, she claims that deposition testimony indicating that Mr. Pennington had smoked cigarettes since 1954 provides sufficient evidence to survive the tobacco companies' motion for summary judgment on her non-preempted pre–1966 claim.

In making this argument, Mrs. Pennington misconstrues the relative burdens on the movant and nonmovant in a summary judgment proceeding. It is not sufficient for her to argue in the abstract that the legal theory she relies on encompasses some factual questions. Nor can she survive the tobacco companies' motion for summary judgment simply by establishing that Mr. Pennington smoked cigarettes and that he died of esophageal cancer. To prevail on the merits of her products liability claim, Mrs. Pennington "must prove that the harm resulted from a condition of the

---

**13.** We also note that the unreasonably dangerous per se theory of product defect was rejected by the Louisiana Products Liability Act of 1988. La.Rev.Stat. §§ 9:2800.51–2800.59 (West Supp. 1989). This Act sets out the exclusive theories of products liability available in Louisiana after the effective date of the Act, September 1, 1988. *Id.* at 2800.52. The Act does not include the risk-utility definition of a product defect con-

tained in the *Halphen* decision. *Id.* at § 2800.54(B)(exclusive listing of the definitions of an unreasonably dangerous product). Thus, while the unreasonably dangerous per se theory is applicable to Mrs. Pennington's claim, brought before September 1, 1988, it is no longer a viable theory in Louisiana. This increases our reluctance to rule on this issue.

product." *Halphen,* 484 So.2d at 113. To survive the tobacco companies' motion for summary judgment, she must make a sufficient showing of a material fact issue on this essential element of her claim. *Celotex,* 477 U.S. at 321–324, 106 S.Ct. at 2552–2553.

After carefully reviewing the record, we find that Mrs. Pennington has submitted no proof in response to the summary judgment motion to support her contention that cigarette smoking caused her husband's death. In particular, the record contains no information regarding Mr. Pennington's diagnosis and the progression and possible causes of his illness. Mrs. Pennington has offered no proof about Mr. Pennington's condition in particular, or esophageal cancer in general, to support her allegation that a defect in the tobacco companies' cigarettes caused her husband's death.[14]

In opposing the tobacco companies' motion for summary judgment, Mrs. Pennington relies solely on an article discussing synergism in carcinogens. Reif, *Synergism in Carcinogenesis,* 73 J. Nat'l Cancer Inst. 25 (1984). The article states that exposure to more than one carcinogen may increase the risks of contracting cancer because the effect of the substances acting together exceeds their impact when they operate alone. Even assuming that this article is competent summary judgment proof,[15] it does not support Mrs. Pennington's claim that cigarettes caused her husband's death. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986). The same is true of a theoretical possibility. The general claim that some carcinogens may work together to increase the risk of contracting cancer does not, by itself, raise a material fact issue regarding the cause of Mr. Pennington's esophageal cancer. *See Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988)(Affidavit stating that there was a reasonable medical probability that the decedent's colon cancer was caused by asbestos, based *solely* on the fact that there was a statistically significant association between asbestos exposure and colon cancer, was not a sufficient showing of causation under *Celotex*).

We note that this case had been pending for four years, with active discovery, before the district court rendered summary judgment in favor of the tobacco companies. By way of comparison, the *Celotex* court found that a two-year period between the filing of a complaint and summary judgment was an "adequate time for discovery" for the plaintiff in a products liability suit against asbestos manufacturers to

---

**14.** We note, by way of illustration, that the record contains no medical opinion (by way of affidavit or any other form of summary judgment proof) confirming that esophageal cancer led to Mr. Pennington's death. The record also contains no expert opinion from any individual who treated Mr. Pennington or examined his medical records stating that smoking was a likely or even possible cause of his cancer. These essential factual assertions appear only in Mrs. Pennington's complaint. A party opposing a properly supported motion for summary judgment, however, "may not rest upon the mere allegations ... of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (quoting Fed. R.Civ.P. 56(e)).

**15.** The tobacco companies correctly note that this article is hearsay. We have previously found that newspaper articles and excerpts from a book, which were attached to an affidavit stating that they were true and correct copies, were not competent proof in a summary judgment proceeding to establish the truth of the matters reported. *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 556–57 (5th Cir. 1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

In *Celotex,* however, the summary judgment proof included letters that tended to support the nonmovant's version of a key factual dispute. The movant argued that these documents were inadmissible hearsay. 477 U.S. at 319, 106 S.Ct. at 2551. The Supreme Court stated that a nonmoving party is not required "to produce evidence in a form that would be admissible at trial in order to avoid summary judgment." 477 U.S. at 324, 106 S.Ct. at 2553. The court went on to explain that the materials listed in Fed.R. Civ.P. 56(c)—pleadings, depositions, answers to interrogatories, admissions on file, and affidavits—were the type of proof "that one would normally expect" a nonmovant to rely upon. 477 U.S. at 324, 106 S.Ct. at 2553.

have gathered sufficient proof to make a showing of a material fact on an essential element of her claim. 477 U.S. at 322, 106 S.Ct. at 2553. Moreover, our review of the record supports our conclusion Mrs. Pennington had full opportunity to adduce summary judgment proof on the essential elements of her claim.

We recognize that this case presents a complex issue regarding the joint liability of manufacturers of different products for a single harm. We emphasize that we do not hold that Mrs. Pennington must have proved the causation of her husband's cancer in order to survive the tobacco companies' motion for summary judgment. We find, however, that this is an unusual case where the plaintiff, after four years of discovery, has made no showing to support her contention that smoking caused or contributed to the decedent's esophageal cancer. We therefore conclude that she has failed to raise a material fact issue on an essential element of her non-preempted claims. We uphold the district court's summary judgment on this ground.

## IV. *Conclusion*

Mrs. Pennington's claim that the tobacco companies failed to provide adequate warnings about the dangers of cigarette smoking after 1965 is preempted by the Federal Cigarette Labeling and Advertising Act. Her contention that the tobacco companies failed to provide adequate warnings before the effective date of the Act and her claim that cigarettes are unreasonably dangerous per se under Louisiana law are not preempted. In opposing the tobacco companies motion for summary judgment, however, Mrs. Pennington failed to make a showing sufficient to create a substantial fact issue as to an essential element of her claim—that the decedent's esophageal cancer was caused by a defect in the tobacco companies' cigarettes. For this reason, summary judgment was proper on all non-preempted claims. The judgment of the district court is

AFFIRMED.