**Lynda D. PERRY**

v.

**MERCEDES BENZ OF NORTH AMERICA, INC., and ABC Insurance Company.**

**Civ. A. No. 89–558–B.**

United States District Court, M.D. Louisiana.

March 22, 1991.

---

Michael C. Palmintier, Baton Rouge, La., for plaintiff.

Stephen B. Lemann, Monroe & Lemann, New Orleans, La., Benjamin R. Slater, III, Mark E. Van Horn, for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This case requires the Court to determine whether plaintiff's claim under Louisiana products liability law for an alleged manufacturing or design defect in an automobile airbag is preempted by the National Traffic and Motor Vehicle Safety Act (National Safety Act) and the federal safety standards.[1] On March 4, 1986, Lynda D. Perry suffered personal injuries when she drove her vehicle into a ditch after running a stop sign at a "T" intersection. At the time of the accident, the plaintiff was driving a 1986 Mercedes Benz, Model 190E, which is distributed in the United States by the defendant, Mercedes Benz of North America (MBNA). Perry was not wearing her seat belt at the time of the accident. The plaintiff filed suit against MBNA in a Louisiana state court alleging the defendant is strictly liable under Louisiana products liability law due to the failure of the factory installed airbag to deploy or inflate upon impact. Specifically, Perry contends that the airbag did not operate properly because of a manufacturing defect and/or a design defect. MBNA timely removed the case to federal court under 28 U.S.C. § 1441. The Court has jurisdiction under 28 U.S.C. § 1332 and venue is proper pursuant to 28 U.S.C. § 1391.

The case is now before the Court on the defendant's motion for summary judgement. MBNA contends any action concerning the defective design of airbags pursuant to Louisiana products liability law is preempted by the National Safety Act and the federal safety standards.[2] MBNA also contends it is entitled to summary judgment on the defect claim because there is no material issue of fact in dispute concerning a defect in the product itself or the facts surrounding the accident.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

1. 15 U.S.C.A. §§ 1381–1431 (West 1982 & Supp. 1990), 49 CFR § 571.208.

2. *Id.*

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [3] To oppose the granting of summary judgment, Rule 56(e) provides that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, ... [instead, the defending party], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." The nonmoving party must bring forth "significant probative evidence." [4] When all the evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[5]

## I. Is the Louisiana Products Liability Cause of Action for Design Defect Preempted By the National Traffic and Motor Vehicle Safety Act?

■ The Court must first determine whether the plaintiff's state law cause of action based on a design defect is preempted, either explicitly or implicitly, by the National Safety Act. To determine whether the federal act has preempted Louisiana state law, the court must follow the pronouncements set forth by the United States Supreme Court.[6] Under Article I of the United States Constitution and the Supremacy Clause, Congress has the power to legislatively preempt state law in all or in part of a particular field. The essence of the Court's inquiry concerning "[a] preemption question requires an examination of congressional intent." [7]

The Supreme Court recognizes three situations where preemption may apply: (1) where Congress's intent as to the extent of preemption is explicitly defined within the federal law; [8] (2) "in the absence of express preemptive language, Congress may legislate in a given area so comprehensively that federal law occupies an entire field, leaving no room for state regulation;" [9] and, (3) even when the federal law is not intended to occupy the entire field, the state law will be preempted if it in fact conflicts with the federal law,[10] or "when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objects of Congress.' " [11] The Fifth Circuit however has warned that "[w]hile the path of analysis is clear, we must nevertheless tread cautiously. Preemption should not be inferred from every Congressional enactment that overlaps state regulation.... [W]e are concerned only with an actual conflict between federal and state law...." [12] In the case now before this Court, there are no federal statutes expressly establishing design standards for automobile airbags, a passive restraint device. If preemption does exist,

3. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986).

4. *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990).

5. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

6. *California v. ARC American Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1986).

7. *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988); *Fidelity Federal Savings & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 152, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). *See also Cefalu v. B.F. Goodrich,* 871 F.2d 1290, 1293 (5th Cir. 1989).

8. *ANR Pipline,* 485 U.S. at 299, 108 S.Ct. at 1150; *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–96, 103 S.Ct. 2890, 2898–2900, 77 L.Ed.2d 490 (1983); *Pennington v. Vistron Corp.,* 876 F.2d 414, 417 (5th Cir.1989).

9. *Pennington,* 876 F.2d at 417; *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983); *Moore v. Kimberly–Clark,* 867 F.2d 243, 244 (5th Cir. 1989).

10. *California,* 490 U.S. at 100–01, 109 S.Ct. at 1665; *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); *Pennington,* 876 F.2d at 417.

11. *Pennington,* 876 F.2d at 417 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

12. *Id.*

the Court must find that Congress implicitly and not explicitly intended to preempt this area of the law.

■ To fully understand the nature of the issue before the Court insofar as the design claim is concerned, the Court must set forth the nature of the plaintiff's claim. The jurisprudence has conclusively established that any state products liability cause of action for design defect based on the *failure* of an automobile manufacturer to install airbags is preempted under the National Safety Act.[13] However, this case concerns the next step in the process. Specifically, the issue before this Court is whether or not an automobile manufacturer is suspectable to a design defect cause of action when the airbag *was* installed in the vehicle, but the plaintiff contends the installed airbag was not properly designed. To determine whether such a cause of action exists, the Court must look to the provisions of the National Safety Act, the federal regulations, and their legislative history to ascertain, if possible, the congressional intent when it enacted the federal legislation.

Section 1392(d) of the National Safety Act, commonly referred to as the "preemption clause," provides, in pertinent part:

Whenever a Federal motor vehicle safety standard established ... is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the *same aspect of per-*

*formance* of such vehicle or item of equipment which is not identical to the Federal standard....[14]

The above provision of the Act must read in light of § 1397(k), the "savings clause," which provides:

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.[15]

The task of implementing safety regulations under the National Safety Act was delegated to the National Highway Traffic Safety Administration (NHTSA).[16] Pursuant to § 103 of the National Safety Act, the NHTSA established mandatory safety standards for vehicles, called the Federal Motor Vehicle Safety Standards (FMVSS).[17] The standards applicable to seatbelts and passive restraint devices, i.e., airbags, is set forth in FMVSS 208, entitled "Occupant Crash Protection." This safety standard has formed the basis of preemption of state law claims for the failure to install airbags in automobiles.[18] In support of its motion for summary judgment, the defendant argues that FMVSS 208 also implicitly preempts the plaintiff's state law cause of action concerning an alleged design defect of an installed airbag.

To determine the intended scope and purpose of the federal law and regulations, the Court must examine both the legislative history concerning automobile airbags and the jurisprudence decided by the courts. In 1966, the Senate Report addressing the National Safety Act noted that:

---

**13.** *Pokorny v. Ford Motor Co.,* 902 F.2d 1116 (3d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *Taylor v. General Motors Corp.,* 875 F.2d 816 (11th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Wood v. General Motors Corp.,* 865 F.2d 395 (1st Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); *Dallas v. General Motors Corp.,* 725 F.Supp. 902 (W.D.Tex.1989); *Schwartz v. Volvo of North America Corp.,* 554 So.2d 927 (Ala. 1989).

**14.** 15 U.S.C.A. § 1397(d) (West 1982) (emphasis added).

**15.** *Id.* § 1397(k) (West Supp.1990).

**16.** 49 CFR § 501.2, which provides: "The Administrator [of the NHTSA] is authorized by the Secretary of Transportation (49 CFR 1.50) to: (a) Carry out the National Traffic and Motor Vehicle Safety Act of 1966, as amended...."

**17.** 15 U.S.C.A. §§ 1391(2) & 1392(a) (West 1982); 49 CFR 571.1–.302. *See Wood v. General Motors Corp.,* 865 F.2d 395, 397 (1st Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990).

**18.** 49 CFR § 571.208. *See Wood,* 865 F.2d at 398–400; *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1120 (3d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

Unlike the General Services Administration's procurement standards, both the interim standards and the new and revised standards are expected to be *performance standards,* specifying the required minimum safe performance of vehicles but not manner in which the manufacturer is to achieve the specified performance. (sec. 101(b)). Manufacturers ... will thus be free to compete in developing and selecting devices and structures that can meet or surpass the performance standard.[19]

The Senate Report further stated that Congress desired that the regulations should provide performance standards but the safety standards should not "stifle innovation in automotive design" by setting forth specific design details.[20]

After passage of the National Safety Act, the NHTSA promulgated FMVSS 208. Subsequently, the NHTSA considered, but decided against, amending FMVSS 208 to incorporate specific design regulations of airbags, along with a rule requiring mandatory installation in all vehicles.[21] In 1984, the NHTSA released its final rule concerning standards for occupant crash protection.[22] The report of the NHTSA discussed in great detail all aspects of automobile safety restraint devices, including the merits of airbags. However, the agency declined to require airbags in automobiles, or institute design specifics.[23]

While the NHTSA did not require mandatory use of airbags in automobiles, FMVSS 208 does provide for the use of airbags as one of the three options available to the manufacturer. If a manufacturer should decide to install airbags, as MBNA did in this case, the airbag must meet specified performance guidelines concerning impact.[24] This requirement complies with congressional intent that the NHTSA not institute rigid design specifications, but set forth performance standards.

■ This relationship between the impact of the performance standards on the design standards was discussed by the court in *Woods v. General Motors Corporation.*[25] In *Woods* the First Circuit found that the National Safety Act preempted a state products liability cause of action, stating:

> Plaintiff argues that a state products liability action can never conflict with a FMVSS because products liability actions establish *design* standards, while under the Safety Act, NHTSA may only promulgate *performance* standards. A performance standard establishes a test for a certain aspect of a vehicle's performance, without mandating how the vehicle should be designed to comply with the test.... In contrast, a design standard mandates how a vehicle or item of vehicle equipment should be designed, and does not dictate how the product should perform in response to certain tests....
>
> Merely stating the difference between design and performance standards, however, does not lead to the conclusion that a design standard will never conflict with a federal performance standard. First, although design and performance standards are analytically distinct, in practice the line is not so clear. For example, a performance standard requiring that a vehicle's driver should be able to see in

**19.** S.Rep. No. 1301, 89th Cong., 2d Sess. 2, 5–6, reprinted in 1966 U.S.Code Cong. & Admin. News (Legislative History) 2709, 2713–14.

**20.** *Id.* at 2714.

**21.** *See* 38 Fed.Reg. 16937 (1970) & 41 Fed.Reg. 24070 (1976).

**22.** 49 Fed.Reg. 28962 (1984). The NHTSA noted that the regulations were adopted only

[a]fter a thorough review of the issue of automobile occupant protection, including the long history of the matter; the comments on

the Notice of Proposed Rulemaking (NPRM) and the Supplemental Notice of Proposed Rulemaking (SNPRM); and extensive studies, analysis, and data on the subject; and the court decisions that have resulted in law suits over the different rulemaking actions....

**23.** *Id.* at 29000.

**24.** 49 CFR § 571.208, S5.

**25.** 865 F.2d 395 (1st Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990).

the dark is not very different from a design standard requiring that a vehicle have lights.... By requiring seat belts or passive restraints [airbags], FMVSS 208 has elements of a design standard. Second, although the Safety Act provides that NHTSA should develop performance standards, the Safety Act's preemption provision is not limited to any one type of standard.[26]

The preemption clause of the National Safety Act, § 1392(d), prohibits a state from enacting "any safety standard applicable to the same aspect of performance" as the federal regulations. Because of this provision, "if a state products liability action would establish a design standard related to the 'same aspect of performance,'" then the cause of action is preempted.[27] Further, "it is well-established that a saving clause like [the National Safety Act's] § 1397(k) does not 'save' common law actions that would subvert a federal statutory or regulatory scheme."[28] The Court finds that a suit based on state law for defective design would have such a subversive effect. Therefore, a products liability action for design defect is preempted by the federal performance standards.

Specifically, this Court finds that the plaintiff's claim based on Louisiana products liability law for defect in design is preempted by the National Safety Act. The Court's conclusion is supported by the language and legislative history of the federal statute and regulations. The legislative history of both the National Safety Act and the federal safety standards (FMVSS) implemented by the NHTSA demonstrates that the regulation of airbag designs is a matter to be exclusively determined by federal law and regulations. For this Court to allow the plaintiff to proceed with her claim based on the improper design of an airbag is to ignore the extensive history concerning the proposed regulation of airbags, policy concerns, and the overall purpose and objectives of the NHTSA in the area of restraint devices for automobiles.[29] That a single standard is needed in an area that could be affected by the laws of all fifty states is obvious. If each state could determine rules and regulations for the proper design for an airbag or the minimum deployment speed, there would be a substantial adverse effect upon the scope and purpose of the Act, including uniformity and safer automobiles. Subjecting manufacturers to different standards in each state and having possible conflicting liability standards based on the individual law of each state would conflict with the intent of Congress and the concerns of the NHTSA that a single standard be used throughout the country and the automobile industry. Therefore, the Court finds that the regulation of the design of airbags is solely within the province of the federal government and preempts the plaintiff's design defect cause of action based on Louisiana state law.

## II. Is the Plaintiff's State Law Claim Based on Manufacturing Defect in the Airbag Preempted by the National Traffic and Motor Vehicle Safety Act?

■ The plaintiff has also filed a state law claim based on an alleged defect during the manufacture of the airbag. The plaintiff contends that the failure of the airbag to deploy was the result of a manufacturing defect in the product. Unlike the plaintiff's action based on a defect in the design of the product, a state law products liability action based on the improper manufacture of the product is not preempted by the National Safety Act. A cause of action based on a manufacturing defect is

---

**26.** 865 F.2d at 416–17 (emphasis in original and citations omitted).

**27.** 865 F.2d at 417 (citation omitted).

**28.** *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1125 (3d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

**29.** *See* 49 Fed.Reg. 28962 (1984), which addresses the NHTSA's concerns of airbags, the desire not to discourage manufacturers from continuing to develop safer restraint devises, and recognition that airbags are not designed to take the place of seatbelts. The NHTSA acknowledges that airbags are to be used in conjunction with seatbelts and are not designed to be effective at low speeds. *Id.* at 29001.

not in conflict with the National Safety Act because the action is based on the failure of the manufacturer to meet the design specifications required during the manufacture of the airbag.

■ The defendant denies that the airbag failed to operate as it was designed to do. MBNA concedes that the airbag did not open at the time of the accident, but contends that the plaintiff never reached the threshold velocity needed to trigger the airbag. Therefore, MBNA argues that the airbag operated properly. In support of its motion for summary judgment, MBNA has submitted affidavits, depositions, and other authentic evidence permitted by Rule 56 of the Federal Rules of Civil Procedure to support its contention that the plaintiff's vehicle did not hit the ditch with sufficient velocity to trigger the airbag. These affidavits were executed by the eyewitness as well as experts. The only eyewitness to the accident was an East Baton Rouge deputy sheriff.[30] In his affidavit, James Todd Morris asserts that the plaintiff's vehicle was traveling between 15 and 20 miles per hour and that it was a minor accident.[31] Axel Stehle, the Manager of Product Analysis for MBNA, testified that the airbag installed in the 1986 Model 190E was designed to inflate at a velocity impact of 12 miles per hour or greater against a rigid wall.[32] However, when the impact is against a less rigid wall or substance, such as a "wall made of earth," then a higher rate of speed would be needed to trigger the airbag.[33] Stehle further stated that based on his review of the damage to the vehicle, the accident site, and photos of the vehicle after the accident, the plaintiff

did not reach the threshold velocity to activate the airbag when she impacted the ditch.[34]

In opposition to the defendant's motion and evidence, the plaintiff argues that she was traveling at least 25 miles per hour as she approached the intersection and that she "floorboarded it to get across the intersection."[35] Therefore, plaintiff contends that she had to have been traveling in excess of 25 miles per hour when she impacted the ditch. However, the plaintiff has not provided the Court with any evidence, including expert testimony, other than her own deposition, to refute the evidence put forth by the defendant.

When considering a motion for summary judgment, the Court must determine whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[36] Further, there must exist more than a mere "scintilla of evidence," it must be such that a "jury could reasonably find for the plaintiff."[37] In the instant case, the Court finds that the defendant's evidence sufficiently demonstrates that reasonable jurors could not find other than that the plaintiff's vehicle did not impact at a sufficient velocity to deploy the airbag. Just because the plaintiff in her deposition testified differently from the defendant's overwhelming evidence does not create a material issue of fact in dispute. The plaintiff has failed to provide the Court with evidence to refute or place in dispute an issue over the speed at which her vehicle hit the ditch. Having found the airbag should not have inflated at the time of

---

**30.** The witness contends that he "was forced to apply his brakes hard to avoid being struck." Affidavit of James Todd Morris, Exhibit A to Defendant's Memorandum in Support of Motion for Summary Judgment [hereinafter *Defendant's Memorandum*].

**31.** *Id.*

**32.** Deposition of Mr. Axel Stehle, at 10, 22, 33–34, Exhibit C to *Defendant's Memorandum, supra* note 30.

**33.** *Id.* at 39.

**34.** *Id.* at 10–11, 15–16. The defendant also provided the local dealer's repair record as additional support that the plaintiff's vehicle's airbag was in proper working order prior to the accident.

**35.** Deposition of Lynda D. Perry, at 28, Exhibit A to Plaintiff's Memorandum in Opposition to Summary Judgment.

**36.** *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**37.** *Id.* at 252, 106 S.Ct. at 2514.

the plaintiff's accident, the Court finds there is no basis to support the plaintiff's claim that the airbag was defectively manufactured.

### III. Conclusion

The Court finds that the plaintiff's cause of action for defective design under Louisiana products liability law is preempted by federal law. The Court further finds that the plaintiff's state law claim based on improper manufacture of the airbag is not preempted by federal law. However, the defendant has proven that it is entitled to summary judgment on this claim as a matter of fact and law.

Therefore:

IT IS ORDERED that the motion for summary judgment by Mercedes Benz of North America be and it is hereby GRANTED.

IT IS FURTHER ORDERED that judgment be entered dismissing the plaintiff's suit with prejudice.