882 F.2d 993
 Prod.Liab.Rep.(CCH)P 12,261
Alvin Edward BECK, Individually and As Representative of the
Estate of His Minor Children, Calvin Beck, Chiquita Beck,
Seprina Beck, Tamara Beck, Alvin D. Beck and Bobbie J. Beck,
Plaintiffs-Appellants,
v.
SOMERSET TECHNOLOGIES, INC., Midland-Ross Corp., Midro,
Ltd., California Union Insurance Co., Peter Waterhouse,
Peter Waterhouse Associates, Inc., and the Prudential
Assurance Co., Defendants-Appellees.
 No. 88-3775.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 11, 1989.
 
 John W. DeGravelles, Michael J. Paduda, DeGravelles & Palmintier, Baton Rouge, La., for plaintiffs-appellants.
 William A. Porteous, III, Porteus, Hainkel, Johnson & Sarpy, New Orleans, La., for Waterhouse.
 William V. Dalferes, Jr., Sharon L. Gross, McGlinchey, Stafford, Mintz, Cellini & Land, New Orleans, La., for Prudential Assur. Co.
 James L. Selman, II, Jones, Walker, Waechter, Poitevent, Carrer & Denegre, New Orleans, La., for Midland-Ross Corp.
 Appeal from the United States District Court For the Eastern District of Louisiana.
 Before GOLDBERG, JOHNSON and DUHE, Circuit Judges.
 DUHE, Circuit Judge.
 
 
 1
 Alvin E. Beck appeals from the district court's grant of summary judgment against him. We affirm.
 
 BACKGROUND
 
 2
 This is a products liability action. In 1984 Beck, an employee of Crown Zellerbach Corp. (Crown), was injured while operating a paper rewinder at Crown's paper mill. His hand and arm were pulled into the unguarded nip point of the machine and crushed between two rotating steel cylinders.
 
 
 3
 Beck sued Somerset Technologies, Inc. and Midland-Ross Corp., the corporate successors of the manufacturer of the rewinder, and their insurers; (collectively, "Somerset"); Peter Waterhouse and Peter Waterhouse Associates, Inc., (collectively "Waterhouse"), consultants to Crown, and their insurer, The Prudential Assurance Co. The trial court granted summary judgment in favor of defendants.
 
 ANALYSIS
 
 4
 In reviewing a summary judgment, we apply the same standard that governs the district court's determination. Russell v. Harrison, 736 F.2d 283, 287 (5th Cir.1984).
 
 
 5
 FRCP Rule 56(c) provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is "material" if it might affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because subject matter jurisdiction in this case is founded on diversity, the case is controlled by Louisiana law.
 
 
 6
 (1) The Somerset Motion
 
 
 7
 To recover from a manufacturer in Louisiana, the plaintiff must prove that the harm resulted from a condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985).
 
 
 8
 The trial court found that Somerset manufactured the rewinder and sold it to Crown in 1925 without a nip guard and that this omission rendered the rewinder hazardous, dangerous to work with, and "arguably defective and/or deficient". The trial court further found, however, that Crown received advice regarding the necessity of nip guards from Somerset, Waterhouse, and the Occupational Safety and Health Administration, and that Crown had, at some time before Beck's accident, used a nip guard on this rewinder but removed it. The trial court held that Crown's willful and consistent neglect to install and use nip guards on its rewinding machines constituted a superceding act which relieved Somerset of any possible liability. The trial court also held that Somerset was not strictly liable on a failure to warn theory because Crown was fully aware of the danger posed by the absence of a nip guard for years before Beck's accident in 1984.
 
 
 9
 Beck contends the trial court erred in granting summary judgment in favor of Somerset because genuine issues of material fact exist. First, Beck argues that Somerset did not prove that Crown received the warnings it sent. Proof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). Thus, the question becomes whether or not Somerset mailed the letter to Crown. If such evidence is presented and not rebutted, then it may be presumed that Crown received the warning. The record contains a copy of the properly addressed letter, a certified mail receipt and signed return post cards. Accordingly, we hold that there was sufficient evidence to create a presumption that the letter was received by Crown in the due course of the mail. Thus, the burden of producing evidence of non-delivery shifted to Beck. The only evidence of non-delivery presented by Beck is a Crown employee's testimony that he did not remember receiving a warning letter from Somerset and that he did not recall that the person who signed the return receipt worked for Crown. This testimony is not sufficient to rebut the presumption that the letter was received.
 
 
 10
 Beck also disputes that Crown received verbal warnings from Somerset not to operate the rewinder involved in Beck's accident without a nip guard. Whether or not Somerset verbally warned Crown not to operate this rewinder without a nip guard is not a material factual issue. Crown received a written warning from Somerset, therefore, any failure by Somerset to verbally warn Crown of the danger associated with this rewinder would not affect the outcome of the suit.
 
 
 11
 Next Beck contends the Somerset warnings were inadequate because they were directed to Crown rather than Beck and because they were too few in number.
 
 
 12
 The adequacy and quantity of Somerset's warnings is not material to the resolution of this case. A manufacturer is not required to provide warnings of dangers which are obvious to the ordinary user. Bloxom v. Bloxom, 512 So.2d 839 (La.1987); Gines v. State Farm Fire & Cas. Co., 516 So.2d 1231 (La.App. 2nd Cir.1987), writ denied 519 So.2d 127 (La.1988). The evidence establishes that the danger involved in operating the rewinder without a nip guard was obvious to Crown[1] and should have been obvious to Beck. Beck had been employed by Crown for 16 years at the time of his accident. He had worked with this rewinder for approximately two and one half years before the accident. He also had experience on a similar machine. The record contains pictures of the rewinder. Our review of these pictures and the description of the operation of the rewinder makes clear that it would be apparent to any operator of the rewinder that using it without guards places one at risk of coming into accidental contact with the nip point and revolving cylinders. Under these circumstances, a reasonable jury could not find that an experienced operator like Beck was unaware of the inherent danger posed by the unguarded rotating steel cylinders.
 
 
 13
 Ingram v. Caterpillar Machinery Corp., 535 So.2d 723 (La.1988)[2] is factually distinguishable from the present situation. The Louisiana Supreme Court there found that the forklift operator, plaintiff, could not reasonably be expected to know from logic or experience that if the machine overturned laterally he could be seriously injured or killed if he jumped from the machine but might be safe if he held on. This information was based on principles of physics beyond the knowledge of the ordinary forklift operator. In this case an experienced rewinder operator like Beck could not help but know of the danger of being drawn into the rotating cylinders.
 
 
 14
 Beck also argues that the rewinding machine is unreasonably dangerous per se and therefore warnings would not relieve Somerset of liability. Beck contends that there is a genuine issue of fact as to whether the rewinder's utility is outweighed by its danger to the individuals who operated it without a nip guard. Beck's analysis is incorrect. The utility of the machine must be evaluated against its danger to the general public, not to the individual plaintiff. Summary judgment in favor of Somerset was properly granted.[3]
 
 
 15
 (2) The Waterhouse Motion
 
 
 16
 The trial court found that Crown retained Waterhouse as a consultant from 1970 to 1980 for the purpose of examining the machinery at its Bogalusa plant and advising Crown how to make the machinery more effective and efficient. The trial court further found that if Waterhouse noticed potential safety hazards, he would report them to Crown and that on more than one occasion he informed Crown of the need for nip guards on the rewinding machines. These findings are uncontradicted. Because of Crown's failure to heed Waterhouse's advice, the trial court refused to hold Waterhouse liable in either tort or contract.
 
 
 17
 Beck contends the trial court erred in granting summary judgment in favor of Waterhouse because genuine issues of material fact exist regarding Waterhouse's contractual and delictual responsibility to Crown. Beck's main contention is that Crown hired Waterhouse to advise it on winder safety but did nothing to prevent the dangerous condition created by operating the rewinder without nip guards. He also contends that Waterhouse undertook to perform Crown's duty to provide safe rewinders for its employees to operate and that Waterhouse's inaction following the removal of the nip guard on this rewinder was negligent and further may have been interpreted by Crown to mean that the necessity for the nip guards had been alleviated. Beck concludes by arguing that Waterhouse's "delictual duty" continued until the time of the accident.
 
 
 18
 Beck fails, however, to present a factual issue as to Waterhouse's control over Crown or the rewinder which would permit him to implement any safety measures. Appellant fails to carry the burden imposed by FRCP 56(e). It requires that to successfully oppose a summary judgment motion, a party must set forth specific facts showing that there is a genuine issue for trial. Beck has failed to meet this requirement. He merely argues about results that flow from the admitted facts. No issues of fact are created by this tactic. Summary judgment was properly granted as to Waterhouse.
 
 
 19
 (3) The Prudential Motion
 
 
 20
 The trial court held there was no coverage based on its finding that Waterhouse stopped performing consulting work for Crown before the effective date of the Prudential policy.
 
 
 21
 Beck contends that the trial court erred because there is a disputed factual issue regarding whether Waterhouse's obligation to give safety advice was a continuing obligation which existed at the time of Beck's accident.
 
 
 22
 The Prudential policy is an "occurrence" policy and as such only provides coverage for acts occurring within the policy period. The policy took effect in 1981. It is uncontradicted that Waterhouse made no visits to Crown's plant nor performed any services concerning it after July 1980. Accordingly, the only way the Prudential policy could provide coverage for Beck's accident would be if Waterhouse had, as appellant contends, some form of continuing duty to Crown that persisted after his last visit to Crown's plant and that duty was violated. We have already found that Waterhouse did not have any duty whatsoever to advise Crown of the need for a nip guard. Accordingly, there could be no continuing duty that would have afforded coverage under the policy.
 
 
 23
 Alternatively Beck argues that there is coverage under the Prudential policy because it includes completed operations coverage which provides coverage for an accident occurring during the policy period but arising from acts taking place before the policy's effective date. The Prudential policy "products and completed operations" coverage only provides coverage for damages caused by an insured's products and does not provide coverage for consulting services.
 
 
 24
 The judgment is AFFIRMED.
 
 
 
 [1]
 Appellant discusses at great length the extent of Crown's knowledge of the danger posed by the rewinder but the record establishes beyond question that Crown was aware of both the availability of nip guards and the necessity for them
 
 
 [2]
 Which also holds that a manufacturer need warn only of dangers not obvious to the ordinary user. Id. at 729
 
 
 [3]
 Beck argues that the trial court erred in finding that Crown's installation and subsequent removal of a nip guard in 1971 or 1972 was a "superceding" cause which relieved Somerset of liability for his injuries. This is a misstatement of the trial court's finding. The trial court found that given Crown's knowledge of the danger, its failure to install nip guards was a superceding act which relieved Somerset of any liability for negligence. The installation of the nip guard in 1971 or 1972 was merely mentioned as evidence of Crown's knowledge of the danger