Debra JOHNSON, Plaintiff,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Carlin Brandt, Individually and in his capacity as Division Manager, John Tindell, Individually and in his capacity as District Manager, Ann Lindholm, Individually and in her capacity as Area Manager, Art Caruth, Individually and in his capacity as Area Manager, and Alberta Jones, Individually and in her capacity as Manager, Defendants.

Civ. A. No. 1:92CV33.

United States District Court,
E.D. Texas,
Beaumont Division.

March 17, 1993.

Danny Michael Chappell, Southwestern Bell Telephone Co., Bellaire, TX, for defendants.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

Pending before the Court is Defendant's motion for summary judgment. After consideration of said motion, the memorandum of law and documents filed in support thereof, as well as the response and supplemental response filed by Plaintiff, this Court is of the opinion that there is no genuine issue of material fact in this case and that, for the reasons discussed below, Defendants' motion should be granted.

## I. Background

On January 31, 1992, the Plaintiff, Debra Johnson (plaintiff), filed a complaint against her employer and supervisors at Southwestern Bell Telephone (defendants), alleging race and sex discrimination, intentional infliction of emotional distress, negligent supervision, and breach of contract.

The plaintiff, an african american female, was employed by the defendant as a service representative. The present action arose concerning allegations that the plaintiff was required to do retraining, work in a particular employee department, and take a particular vacation, differently than other similarly situated employees because of the plaintiff's race, color, and sex. In addition, the plaintiff alleged that she was denied emergency time off, harassed by her supervisors, and generally treated less favorably in circumstances where non-minority employees have not been treated as harshly.

## II. Standard of Review

Summary judgment is authorized if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[1] The United States Supreme Court has interpreted this rule to mandate the entry of summary judgment after an adequate time for discovery, against

Rosalind A. Kelly, Oliver Wendell Sprott, Jr., Houston, TX, for plaintiff.

1. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[2] The Court must review all the facts in the light most favorable to the non-moving party.[3]

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[4] To oppose the granting of summary judgment, Rule 56(e) provides that an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [instead, the defending party], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[5]

In *Celotex*, the Supreme Court held that a party moving for summary judgment who does not have the burden of proof at trial can satisfy the burden under Rule 56 by "pointing out to the district court ... an absence of evidence to support the non-moving party's case." [6] A movant is not required to submit affidavits or other evidence negating the other party's claims, rather, the movant's burden is satisfied by showing that "the pleadings, depositions, answers to interrogatories, and admissions on file" do not contain evidence supporting the elements of the non-movant's claims.[7] When this burden is met, *Liberty Lobby* teaches that the non-movant must come forward with evidence that would be sufficient to withstand directed verdict at trial.[8]

Applying this standard, the Court now turns to the merits of the defendants, Southwestern Bell's motion under FED.R.CIV.P. 56.

### III. Title VII Claims

Plaintiff alleges unlawful race and sex discrimination.[9] Plaintiff's initial burden of proof is to establish a prima facie case of racial discrimination by showing that she belongs to a protected class; that she was qualified for her position; that, in spite of her qualifications, she was terminated.[10] Upon the showing of a prima facie case, a defendant must articulate a legitimate, nondiscriminatory reason for the employee's rejection.[11] The plaintiff would then carry the burden of proof and must show that the defendant's proffered explanation is thereby merely a pretext for discrimination.[12] The elements of a prima facie case are flexible and have been applied with appropriate modifications in cases involving alleged discrimi-

2. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

3. *Id.*

4. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fotenot v. Upjohn Co.* 780 F.2d 1190 (5th Cir.1986).

5. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

6. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The Court further described the movant's burden as follows:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of "the pleadings, de-positions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the existence of a genuine issue of material fact. *Id.*

7. *Id.*

8. *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. at 2512.

9. Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended in 1972.

10. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

11. *Id.* at 802, 93 S.Ct. at 1824; *Wilson v. Belmont Homes*, 970 F.2d 53 (5th Cir.1992).

12. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

nation in promotion[13], discipline[14], and discharge practices.[15]

According to the pleadings, the plaintiff is a female african american who was not given the treatment and benefits in her employment with the defendant that other non-minority employees enjoyed. Ultimately the plaintiff alleges she was forced to resign from her position in June 1990, because she was no longer able to work due to the treatment she experienced.

■ Assuming under the reasoning in *McDonnell Douglas* that the plaintiff has, in fact, established a prima facie case, then the burden shifts to the employer defendant to articulate some legitimate, non-discriminatory reason for the plaintiff employee's rejection.[16] In *Texas Department of Community Affairs v. Burdine,*[17] the Supreme Court explained that this burden is not simply one of pleading; rather, the defendant must introduce admissable evidence of nondiscriminatory reasons for the employment action complained of by the plaintiff.[18] The defendant is not required to go further, however, by persuading the trier of fact that its stated reason for the employment decision in question is the true reason.[19]

To rebut the plaintiff's prima facie case, the defendants submitted, along with its motion for summary judgment, three employee affidavits.[20] The affidavits were made by female area managers in the employee benefit services and residence sales and services center divisions and specifically deny the plaintiff was forced to resign or treated unfairly on the basis of race, color or sex. The affidavits specifically assert all of the alleged incidents and allegations described in the plaintiff's complaint were handled according to standard company practice and at no time was the plaintiff treated differently than any other employee would have been treated under the same circumstances.[21]

The defendants specifically assert by affidavit that the plaintiff was not terminated, fired or discharged by the defendants. Rather, the affidavits indicate the plaintiff requested sickness disability benefits from the defendant and the plaintiff's physician stated she was disabled and was not able to return to work at the end of her fifty-two weeks of sickness disability benefits.[22] Concerning any unfair treatment, the defendants assert in affidavit form that the plaintiff was required to do retraining because of her absence from work for an extended period of time. By affidavit, the defendants deny the charge that in October 1989, the plaintiff was coded unexcused for taking time off to care for her sick child. Defendants further state that around December 22, 1989, the plaintiff was denied a request for excused time on the basis that she had been granted 119 hours of excused time in the preceding eight months.[23] The plaintiff's immediate supervisor, also an african american female, states "unequivocally" by affidavit that the plaintiff was never treated unfairly, and that in fact, the plaintiff received treatment more favorable than others in her position and situation.[24] Based on the information in the affidavits, defendants assert the plaintiff was not

---

**13.** See *United States Postal Serv. v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

**14.** *Woodbury v. N.Y.C. Transit Auth.,* 832 F.2d 764 (2d Cir.1987); *Coates v. Johnson,* 756 F.2d 524 (7th Cir.1985); *Williams v. Sonoco Prods. Co.,* 738 F.2d 433 (4th Cir.1984).

**15.** See *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

**16.** 411 U.S. at 802, 93 S.Ct. at 1824.

**17.** 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**18.** *Id.* at 254, 101 S.Ct. at 1094.

**19.** *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

**20.** See Defendant's Motion for Summary Judgment, Exhibits A–C, Affidavits of the Managers in the Residence Sales and Services Center for the Defendant.

**21.** See Exhibit B, Affidavit of Area Manager, Residence Sales and Services Center.

**22.** See Exhibit A, Affidavit of Area Manager of Employee Benefit Services.

**23.** See Exhibit B, Affidavit of Area Manager, Residence Sales and Services Center.

**24.** See Exhibit C, Affidavit of Manager, Residence Sales and Services Center.

terminated but left her employment due to a medical disability.

■ With a finding that the defendant satisfied the burden of production, the burden shifts back to the plaintiff to prove that the articulated reason is a pretext for intentional discrimination.[25] To meet this burden, employment discrimination claimants must persuade the fact finder that it is more likely than not that he or she would not have been affected by the employment practice at issue but for the plaintiff's membership in a protected group.[26]

■ To meet the requirements under the burden shift, plaintiff may provide statistical evidence, evidence of discriminatory treatment of other individuals or by anecdotal evidence of the employer's prejudice.[27] At bar, plaintiff responded with an affidavit urging she has "personal knowledge of the facts stated in ... [Plaintiff's Pleadings] ... and the allegations therein are all true and correct."[28] The plaintiff did not file any counter affidavits that indicate any discriminatory conduct by the defendants or that show she was treated differently as a result of her minority status. Nor did the plaintiff file any affidavits alleging managerial conduct indicative of animus toward the plaintiff's group, evidence that the plaintiff was treated more harshly than other employees outside the minority group, or cite any numerical evidence in support of her position. In short, the plaintiff did not put forth any affidavits or summary judgment evidence supporting direct or circumstantial unlawful conduct by the defendants alleged in the pleadings.

■ The evidence produced to defeat a properly supported motion for summary judgment must adduce affirmative evidence.[29] Naked assertions of an actual dispute unsupported by facts will not suffice[30], nor will the mere allegations of the pleadings.[31] It is insufficient for the nonmovant to argue in the abstract that the legal theory involved in the case encompasses some factual questions.[32] In summation, the nonmovant cannot rely upon argument alone to defeat a properly supported motion for summary judgment.[33]

The plaintiff did not meet her burden of production, and therefore, the Defendants' motion for summary judgment is granted for the defendants on the Title VII claims.

## IV. State Law Claims

■ In addition, plaintiff alleges claims of intentional infliction of emotional distress, negligent supervision and breach of contract under the laws of the State of Texas.

Section 301 of the Labor Management Relations Act (LMRA) permits an employee to file a federal cause of action against the employer for breach of a collective bargain-

25. *McDonnell Douglas*, 411 U.S. at 803–804, 93 S.Ct. at 1824–1825.

26. See *Fields v. Clark Univ.*, 817 F.2d 931 (1st Cir.1987); *Krodel v. Young*, 748 F.2d 701 (D.C.Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985).

27. See, e.g., *Hazlewood School District v. United States*, 433 U.S. 299, 303, 97 S.Ct. 2736, 2739, 53 L.Ed.2d 768 (1977); *Catlett v. Missouri Highway and Transp. Dept.*, 828 F.2d 1260 (8th Cir.1987); *Trevino v. Holly Sugar Co.*, 811 F.2d 896 (5th Cir.1987); *Penk v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458 (9th Cir.1987).

28. See Plaintiff's Affidavit in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment.

29. *Fields v. Hallsville Indep. School Dist.*, 906 F.2d 1017, 1019 (5th Cir.1990).

30. *Solo Serve Corp. v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir.1991); *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 499 (5th Cir.1990); *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

31. *Pennington v. Visitron Corp.*, 876 F.2d 414, 426 (5th Cir.1989).

32. *Id.* at 426.

33. *Solo Serve*, 929 F.2d at 164 (5th Cir.1991) ("only evidence—not argument, not facts in the complaint" will satisfy nonmovant's burden of proof); *accord Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 998 (5th Cir.1989); *Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F.2d 126, 129 (5th Cir.1988); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

ing agreement.[34] However, § 203 of the LMRA allows the union and the employer to agree, through a collective bargaining agreement, to resolve employment disputes by arbitration.[35] The use of arbitration procedures to resolve employment disputes received strong approval from the United States Supreme Court decisions which require compliance with the collective bargaining agreement's grievance process before resorting to the court when the employment dispute touches on a breach of the collective bargaining agreement.[36] Thus, the Supreme Court has prohibited attempts by individual employees which would "completely sidestep available grievance procedures in favor of a lawsuit ... [because such suits] would deprive the employer and the union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." [37] The Supreme Court explained its decision to enforce arbitration procedures in collective bargaining agreements in *United Paperworkers International Union v. MISCO, Incorporated*, wherein the Court explained:

> The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mecha-

nisms without dealing with the merits of the dispute. Because the parties have contracted to have disputes settled by an arbitrator ... rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.[38]

■ If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure.[39]

■ It is clear that the preemptive effect of § 301 extends beyond actions alleging mere violations of the collective bargaining agreement.[40] In order to prevent the risk of inconsistent results which may occur from the different principles of law of each state and to promote uniformity in the area of federal labor law, the Supreme Court has consistently applied the principle that a state law claim is preempted if that action hinges upon the interpretation and meaning of the collective bargaining agreement.[41] Consequently, if the resolution of a state law claim cannot be made without an interpretation of the collective bargaining agreement, the claim is "extricably intertwined" with the agreement and preempted under § 301.[42]

**34.** 29 U.S.C. § 185.

**35.** 29 U.S.C. § 173.

**36.** *Groves v. Ring Screw Works*, 498 U.S. 168, 111 S.Ct. 498, 112 L.Ed.2d 508 (1990); *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *United Paperworkers Int'l Union v. MISCO, Inc.*, 484 U.S. 29, 36–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 561–62, 96 S.Ct. 1048, 1054–55, 47 L.Ed.2d 231 (1976); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *see also, Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 114 (1st Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Strachan v. Union Oil Co.*, 768 F.2d 703, 705 (5th Cir.1985).

**37.** *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 617, 13 L.Ed.2d 580 (1965); *Strachan*, 768 F.2d at 705.

**38.** 484 U.S. at 37, 38, 108 S.Ct. at 371.

**39.** *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 850 (5th Cir.1989); *Daigle v. Gulf States Utility Co.*, 794 F.2d 974, 977 (5th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986).

**40.** The courts have already broadly defined the preemptive scope of § 301. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985); *Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111 (1st Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989).

**41.** *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988); *Lueck*, 471 U.S. at 220, 105 S.Ct. at 1916; *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962).

**42.** *Lingle*, 486 U.S. at 407–10, 108 S.Ct. at 1882–83; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *See also, Wells v. General Motors Corp.*, 881 F.2d 166, 172

To be "independent" of the collective bargaining agreement, and thus not be preempted, the resolution for a state law claim must turn on purely factual questions not touching upon the terms of the collective bargaining agreement.[43]

The plaintiff during the duration of the alleged dispute with the defendants was a member of the exclusive bargaining unit of the Communication Workers of America (CWA) union and she was subject to Collective Bargaining Agreements which had been executed by the CWA and defendants. Those agreements, the Departmental Agreement and the Agreement of General Application created a multilevel grievance and arbitration process to resolve labor and management disputes. In the plaintiff's complaint, she refers to the defendant failing to comply with the guidelines of the CWA handbook resulting in a breach of CWA policy. Outside of the pleadings in the complaint, there was no evidence submitted by the plaintiff supporting any state law violations by the defendants.

Based on the summary judgment evidence proffered on the plaintiff's state law claims, the facts surrounding allegations are not sufficient to establish an independent action and the claims arise out of conduct covered by the collective bargaining agreement. The plaintiff has not submitted any evidence sufficient to support the alleged state law claims. Assuming that evidence was submitted, the Court concludes the state law claims of intentional infliction of emotional distress, negligent supervision, and breach of contract require a determination under the collective bargaining agreement of whether the termination was wrongful.

Therefore, the Court finds that the plaintiff's claims for intentional infliction of emotional distress, negligent supervision and breach of contract are preempted by § 301. In addition, there was no evidence proferred in support of the existence of these claims. Thus, summary judgment is granted for the defendants on the state law claims brought by the plaintiff.

(5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990).

## V. *Conclusion*

The Court finds that the plaintiff did not meet her burden of proof based on the evidence presented to the Court with respect to the Title VII and state law claims. Further, the Court finds that the plaintiff has failed to exhaust her administrative remedies as provided by the collective bargaining agreement and the state law claims are preempted by § 301 of the Labor Management Relations Act.

Accordingly, summary judgment is **GRANTED** for the defendants on all of plaintiff's claims.

**43.** *Lingle,* 486 U.S. at 407–10, 108 S.Ct. at 1882–84.