United States Court of Appeals,

Fifth Circuit.

No. 91-7253.

Paul CROSS and Beverly Cross, Plaintiffs-Appellants,

v.

CUMMINS ENGINE COMPANY, et al., Defendants.

Cummins Engine Company, Defendant-Appellee.

June 16, 1993.

Appeal from the United States District Court for the Northern District of Mississippi.

Before DAVIS and JONES, Circuit Judges, and PARKER[1], District Judge.

PER CURIAM:

Plaintiffs brought this diversity action seeking recovery for personal injuries against Cummins Engine Company (Cummins) and Freightliner Corporation (Freightliner). The district court granted summary judgment for Cummins, dismissing Cross's claims against Cummins. The district court found there was sufficient proof in the record to sustain the plaintiffs' claims against Freightliner. The Crosses subsequently entered into a settlement agreement with Freightliner. Plaintiffs appeal from the order dismissing their claims against Cummins. We vacate the district court's order granting summary judgment for Cummins and remand this case to the district court for further proceedings.

FACTS

Appellant Paul Cross was severely burned on August 26, 1983, in a gasoline fire. Cross, a tank truck driver, was unloading gasoline from his truck into an above ground storage tank at a convenience store. The pump used to transfer the gasoline was driver by a power take off (PTO) assembly attached to the truck engine, which required that the truck be left idling during the transfer. After some period of pumping, the storage tank began to overflow, dumping gasoline on the ground around the truck. Cross attempted to turn off the truck engine, but was engulfed in flames as the gasoline ignited.

[1]Chief Judge of the Eastern District of Texas, sitting by designation.

Appellant contends that a cause of the explosion and fire was a condition known as overspeeding. Although Cummins disputes this allegation, for purposes of the appeal of summary judgment, we will take appellant's allegation as true.

A diesel engine is designed to operate on a specific ratio of air to liquid fuel. The speed of the engine is determined by the mechanical load on the engine and the amounts of air and fuel available. Engine speed is regulated by a governor which monitors the revolutions per minute and adjusts the fuel flow to the cylinders. Gasoline produces highly combustible vapors when exposed to air. Vapors from a gasoline spill may enter the engine through the air intake ports. This additional, unregulated source of fuel can cause the engine to accelerate uncontrollably. A diesel engine may accelerate to the point of self destruction, and can become an ignition source, turning the cloud of combustible vapor into an explosion and fire.

A relatively inexpensive air intake shutoff valve is available which, when attached to the engine, would prevent overspeeding. No air intake shutoff valve was attached to the engine of the truck appellant was driving the day of the accident.

Cummins designed and built the engine involved in the instant case. Cummins shipped the engine to Freightliner as a stock item on December 11, 1980. Freightliner assembled the truck as manufacturer, incorporating the stock engine built by Cummins. Cummins had actual knowledge that a dangerous condition is created when its diesel engine is operated in an environment containing volatile fumes. The summary judgment evidence, though perhaps not uncontested, indicates that Freightliner was also aware of this danger. Cummins' appreciation of this danger led it to design and manufacture an air intake shutoff valve, which it makes available as an optional item on its engines. Cummins contends that it does not install the devices. However, we are unable to conclude from the record before us that this is an undisputed fact.

Freightliner provides a driver's manual for each truck it assembles. Cummins also provides an engine owner's manual that accompanies the truck into which it is installed. Neither manual contained warnings about the danger of overspeeding.

The district court, applying Tennessee law, granted summary judgment to Cummins on the

plaintiffs' strict liability, negligence, and gross negligence claims. It concluded that Cummins could not be held liable because there was no evidence that an air intake shut-off device is necessary for all diesel engines in all circumstances, Cummins was unaware of the intended use of its engine, and only Freightliner had control over whether the device was placed in a particular vehicle. The district court also dismissed the plaintiffs' failure to warn claims against Cummins. It concluded that Cummins adequately warned Freightliner about the overspeeding phenomenon and, therefore, reasonably relied on Freightliner to convey those warnings to its customers. This appeal followed.

## STANDARD OF REVIEW

Appellate review of a summary judgment is governed by the same legal standard applied by the district court in the first instance. *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989). Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute is deemed "genuine" if a reasonable juror could return a verdict for the nonmovant and a fact is considered "material" if it might affect the outcome of the lawsuit under the governing substantive law. *Beck,* 882 F.2d at 996, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although this court has upheld grants of summary judgment in certain products liability and negligence actions where the claims clearly lacked an evidentiary basis, we have cautioned that "the use of summary judgment is rarely appropriate in negligence or produce liability cases, even where the material facts are not disputed." *Trevino v. Yamaha Motor Corp.,* 882 F.2d 182 (5th Cir.1989).

## CHOICE OF LAW

In *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968), the Mississippi Supreme Court adopted the "center of gravity" test for substantive choice of law purposes. Although the truck was manufactured in North Carolina, and the accident occurred in Mississippi, the plaintiffs are domiciled in Tennessee. Furthermore the inspection, sale and purchase of the truck, the installation of the PTO pump, and some subsequent repairs to the truck were performed in Tennessee. As a consequence, the lower court held that Tennessee's substantive law should apply to the negligence and products liability

causes of action. Appellants state in a footnote that there are a sufficient quantity and quality of connections with Mississippi to require application of Mississippi substantive law. However, the footnote concludes that insofar as the issues on this appeal are concerned, there are no major differences in the substantive law of the two states, and stops short of urging us to reverse the district court's choice of law holding. Based on the foregoing, we will not disturb the district court's decision in this regard, and will apply Tennessee law.

MERITS

The Cross's action against Cummins is predicated on Tennessee's Products Liability Act of 1978, codified at Tenn.Code Ann. §§ 29-28-101 to 108.[2] The summary judgment record presented a clear jury question of whether the vehicle was unreasonably dangerous without an air intake shutoff valve. The question presented to us is where Tennessee would place the responsibility for the design defect. The possible candidates are (1) Cummins, as the manufacturer of the engine, (2) Freightliner, as assembler of the various component parts, including the Cummins engine, into a final product, or (3) both the component part manufacturer and the assembler.

Courts have adopted two competing approaches for determining the liability of a component part manufacturer for a design or warning defect that could have been prevented by either a component part manufacturer or an assembler of a finished product. The first approach, which

---

[2]Tenn.Code Ann. § 29-28-105(a) provides that:

> A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

Tenn.Code Ann. § 29-28-102 provides in relevant part:

> (2) "Defective condition" means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption.

> (8) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition.

originated with *Verge v. Ford Motor Co.,* 581 F.2d 384 (3rd Cir.1978), asks whether there was a design or warning defect in the finished product. It then chooses whether the component part manufacturer or the assembler should be responsible for the defect by looking to such factors as trade custom, expertise, and practicality. The second approach, typified by *Union Supply Company v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978), asks only if there was a design or warning defect in the finished product. If there was, both the component part manufacturer and the assembler may be held liable.

In *Verge,* a garbage worker suffered a broken leg when a co-worker backed into him with a garbage truck. *Verge,* 581 F.2d at 385. He then sued Ford Motor Company under § 402(A) of the Restatement (2d) of Torts, alleging that the garbage truck should have been equipped with a buzzer that would sound when the truck was put into reverse gear. *Verge,* 581 F.2d at 386. Ford had manufactured the truck's cab and chassis. The garbage truck's assembler, Leach, had then cut 4 to 6 feet from the chassis, put the compactor on the chassis, and made electrical hook-ups. *Verge,* 581 F.2d at 387.

The Third Circuit analyzed the case as presenting two issues: (1) was there a defect?; and (2) if so, who is responsible for it? To answer the second question, it looked to three factors: trade custom, relative expertise, and practicality. *Verge,* 581 F.2d at 387. The court suggested that these factors were relevant to a determination of whether the product was defective when it left the manufacturer's hands. *Verge,* 581 F.2d at 386. The court then concluded that Ford could not be held liable for the defect—evidence of trade custom pointed in neither direction; Leach was more expert than Ford in its design of garbage trucks; and Ford's installation of the buzzer would not be practical because the chassis could be modified for a number of purposes that would not require a backup buzzer. *Verge,* 581 F.2d at 388.

In *Union Supply,* an employee of a sugar beet refinery caught his arm in a conveyor belt. Union Supply Co. had supplied the conveyor to the employer, Holly Sugar. At the site, Holly Sugar had added a motor, conveyor belt, electrical controls, legs, stairs and walkways, and the counterweight. *Union Supply,* 583 P.2d at 279. The employee brought strict liability claims against

Union Supply, alleging design defects (lack of safety devices), and warning defects. *Union Supply,* 583 P.2d at 279.

The court concluded that a jury could find that both Union Supply and Holly Sugar were designers of the conveyor belt. *Union Supply,* 583 P.2d at 281. It also rejected Union Supply's attempt to introduce evidence that it reasonably expected Holly Sugar to add safety guards:

> In strict liability cases, we are not concerned with who had the duty to provide guards, but rather with whether the conveyor was in a defective condition unreasonably dangerous because of the failure to provide safety guards before it reached the ultimate user or the consumer.

*Union Supply,* 583 P.2d at 283.

Tennessee's High Court has not had occasion to choose between these competing approaches. However at least one intermediate Tennessee appeals court has confronted a similar issue and cited the *Verge* decision and rationale with approval. *Blacksher v. Ft. Worth Steel & Machinery Co.,* Prod.Liab.Rep. ¶ 8580 (Tenn.App.1979).

We find no other relevant Tennessee authority on this question. In predicting how the Tennessee Supreme Court would decide this question, we ordinarily give due regard to opinions by state appellate courts "unless we are convinced by other persuasive data that the highest court of the state would decide otherwise." *Transcontinental Gas v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992). No other persuasive data has come to our attention and we conclude that the Tennessee Supreme Court would follow the *Verge* line of authority.

Applying the *Verge* reasoning to this case, Cummins did not present adequate summary judgment evidence on the *Verge* factors: trade customs, relative expertise and practicality. Thus factual issues are present ed on whether Cummins was responsible for warning of the defect in question. If the facts are resolved in favor of Cross on this issue, a further fact issue is presented on whether Cummins's warnings to Freightliner discharged that responsibility. Because the record does not support the summary judgment, that judgment is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

CONCLUSION

For the above reasons, we vacate the district court's summary judgment in favor of Cummins,

and remand this case to the district court for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

. . . . .